IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

CIVIL ACTION NO. 1:18-CV-00133-WO-LPA

| | | |
|---|---|---|
| DOROTHEA ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF LAW IN** |
| | ) | **SUPPORT OF DEFENDANT P&G'S** |
| THE PROCTER & GAMBLE | ) | **MOTION TO DISMISS PLAINTIFF'S** |
| MANUFACTURING COMPANY | ) | **AMENDED COMPLAINT** |
| ("P&G"), SCOTT SPILLMANN, MD, | ) | |
| and CANDY WRIGHT, | ) | |
| | ) | |
| Defendants. | ) | |

Defendant The Procter & Gamble Manufacturing Company (hereinafter "P&G")

submits this Memorandum of Law in support of *Defendant P&G's Motion to Dismiss Plaintiff's*

*Amended Complaint* ("Motion") pursuant to Rules 12(b)(6) of the Federal Rules of Civil

Procedure and LR 7.2 and 7.3.

## STATEMENT OF THE CASE

Plaintiff filed this action on January 24, 2018 in the Superior Court of Guilford County.

[See, e.g., DE # 6]  On February 23, 2018, Defendant P&G timely removed Plaintiff's

Complaint to this Court. [DE # 1]  On April 20, 2018, P&G and Wright timely filed a Motion

to Dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

[DE # 20]  P&G also filed an Answer and Affirmative Defenses.  [DE # 22]  Defendant

Spillmann filed an Answer and Motion to Dismiss on April 21, 2018.  [DE # 23]  In lieu of a

response to Defendants' separate Motions to Dismiss for failure to state a claim, Plaintiff filed

an Amended Complaint on May 11, 2018, which eliminated some of her original claims, but

which includes more than twenty new allegations that were not included in the original Complaint. [DE # 26] This Motion is filed within 14 days of service of the Amended Complaint in compliance with Rule 15(a)(3).[1]

In her Amended Complaint, Plaintiff alleges claims against P&G for retaliation under Title VII and Section 1981 (Count One), discrimination under Title VII, Section 1981 and N.C.G.S. § 143-422.2 (Count Two), defamation (Count Three), and civil conspiracy (Count Five). [DE # 26]. Defendant seeks dismissal of all Claims against P&G.

## STATEMENT OF RELEVANT FACTS[2]

Plaintiff began working for P&G in 1989. In 2013, Plaintiff began working as a Registered Nurse at the P&G facility in Browns Summit, North Carolina ("Browns Summit facility). [*Id,* at ¶ 8]. The following year, P&G promoted Plaintiff to a Nurse Manager position. [*Id,* at ¶ 13] P&G hired Defendant Wright, also to the position of Nurse Manager, in November 2016. [*Id,* at ¶ 14] Plaintiff alleges that Wright had less education and work experience than she did. *Id* Plaintiff and Wright both worked "under the medical license of Defendant Spillmann." [*Id,* at ¶ 16]. Dr. Spillmann worked as a contract physician for P&G at the Browns Summit facility, and worked onsite just four hours per week. [*Id,* at ¶¶ 17-18]. One of Plaintiff's duties as Nurse Manager was to evaluate, assess, and authorize payment for invoices that Dr. Spillmann submitted to P&G for his services. [*Id,* at ¶ 19]

---

[1] As noted in Wright's Motion to Dismiss [DE#20], Wright had not yet been properly served at the time of filing. On May 15, 2018, Wright was served with the original Complaint (which was by then moot). [DE #27] Accordingly, Wright's response is due no earlier than June 5, 2018. See Rule 15(a)(3).
[2] For purposes of this Motion, only, Plaintiff's allegations of fact as stated in the Amended Complaint [DE # 26] are taken as true.

Plaintiff alleges she learned in January 2017, that Wright earned a higher salary than she did. Plaintiff asked her manager Sherry Spencer about the reason for the difference in salary and specifically asked if it was because of her race. [*Id*, at ¶ 20]. According to the Amended Complaint, Spencer did not explain the difference in salaries, but Plaintiff nevertheless believed the difference was because of race. [*Id*, at ¶ 21]. Plaintiff then alleges she complained to Senior Human Resources Manager Terri Rouleau, who also declined to discuss why Plaintiff and Wright received different salaries. [*Id*, at ¶ 22].

In February 2017, Plaintiff alleges she expressed interest in applying for a position on P&G's disability board. [*Id*, at ¶ 23]. Plaintiff sought the support of Spencer and Rouleau for her application. [*Id*] While "Plaintiff contends that she was qualified for the position," neither Spencer nor Rouleau supported Plaintiff's application and Plaintiff took no further steps to apply for the position. [*Id*]

Plaintiff alleges that she learned in March 2017, that P&G was providing "training" to Wright that would help her career. Plaintiff questioned Spencer about Wright's training and demanded that she receive "additional training." Plaintiff did not receive "additional training." [*Id*, at ¶ 24].

Plaintiff alleges that she complained to an unnamed P&G manager in April 2017, about perceived disparate treatment regarding salary and training. [*Id*, at ¶ 26] That same month, Plaintiff completed a mandatory P&G compliance survey in which she alleged that she experienced discrimination in connection with her salary and employment opportunities. [*Id*, at ¶ 27] Rouleau met with Plaintiff in May 2017, to discuss her concerns, which Rouleau then referred to P&G Human Resources Manager Matt Pelligrini in Cincinnati, Ohio. [*Id*, at ¶ 28]

3

When Plaintiff met with Pelligrini in June 2017, she complained of disparate treatment and discrimination in connection with her salary, training and benefits. [*Id,* at ¶ 29].

Plaintiff alleges that Wright, Dr. Spillmann, and other unnamed P&G employees were aware of Plaintiff's complaints about salary, training, and employment opportunities, and that Plaintiff believed the differences in salary and training to be the result of disparate treatment. [*Id,* at ¶¶ 21, 30, 81].

After several months of working alongside Plaintiff as a fellow Nurse Manager, Wright informed Dr. Spillmann that she "had concerns regarding the Plaintiff's nursing skills," which then prompted a review of Plaintiff's recent medical files. [*Id,* at ¶¶ 31, 32]. About the same time, in June 2017, Dr. Spillmann submitted invoices to Plaintiff for payment. Plaintiff alleges that those invoices were untimely, factually incomplete and/or inaccurate and therefore refused to submit them for payment – but did not tell anyone until the following month, and never told Dr. Spillmann, the doctor under whose license Plaintiff practiced. [*Id,* at ¶¶ 33, 34]

In July 2017, Spencer told Plaintiff that several employees had made complaints about her. [*Id,* at ¶ 35] On August 15, 2017, Human Resources Manager Asia Wells advised Plaintiff that she was suspended pending an investigation into her work performance because Dr. Spillmann had filed a complaint against her and indicated that he would no longer support her practicing under his license due to her poor work performance. [*Id,* at ¶ 38] Plaintiff responded by contacting Pelligrini to inquire into the disparate treatment concerns that she had raised during their meeting in June 2017. Pelligrini advised Plaintiff that her discrimination and disparate treatment claims had been investigated and were found to be completely unsubstantiated – there was "no evidence to support the Plaintiff's complaints." [*Id,* at ¶ 39].

4

Plaintiff alleges that she asked Pelligrini if she could take the same "training classes" that Wright was taking in March 2017, and Pelligrini "dismissed the Plaintiff's concerns." [*Id*]

Rouleau informed Plaintiff on August 30, 2017, that the investigation into her work performance was complete, and on August 31, 2017, informed Plaintiff that she was being terminated. P&G also concluded that Plaintiff's wrongdoing had not been intentional. [*Id,* at ¶ 40].

After Plaintiff's termination, believing that "Plaintiff's conduct at work violated certain aspects of the Nurse Practices Act," Wright filed a complaint with the North Carolina Board of Nursing ("Board") reporting that Plaintiff was "engaging in poor, or lacking proper judgment that resulted in poor patient care and/or placing a patient in a life-threatening condition." [*Id,* at ¶¶ 36-37]. Wright's complaint to the Board addressed: (a) Plaintiff's failure to follow protocol, causing an employee to believe that Plaintiff caused her to have a scar; (b) Plaintiff's failure to address a hypertension issue with an employee; (c) Plaintiff placed an employee in a life-threatening position; and (d) Plaintiff did not educate an employee about a high blood sugar incident." [*Id,* at ¶ 54]. Plaintiff "contends" that Wright's allegations to the Board about Plaintiff's skills and treatment of patients at P&G and in her prior position lacked personal knowledge and were based on hearsay and unsubstantiated information. [*Id]* Plaintiff also alleges that Wright "concocted" the allegations that she reported to the Board. [*Id,* at ¶ 74]. Plaintiff also "contends" that Wright, a Nurse Manager, did not have a duty to report concerns regarding fellow Nurse Manager Plaintiff's nursing skills and treatment of patients to the Board, and likewise that the Board "had no business interest in or need to know" of those concerns relating to Nurse Manager Plaintiff's conduct. [*Id,* at ¶¶ 64, 69] Plaintiff further

"contends" that Wright had no business reporting her concerns regarding Plaintiff's nursing skills and treatment of patients at P&G to Dr. Spillmann, the doctor under whose license Plaintiff was authorized to practice, because Dr. Spillmann was not a P&G employee. [*Id,* at ¶ 70].

The Amended Complaint "contends" that Defendants P&G, Wright, and Dr. Spillmann were all aware that Plaintiff had complained about alleged discrimination and disparate treatment, and "contends that an agreement existed between two or more persons, including but not limited to [Defendants], to do an unlawful act (that is, retaliate against Plaintiff . . .) . . . ." [*Id,* at ¶¶ 81-82].

## ARGUMENT

Plaintiff's Amended Complaint, which has been stocked with new, conclusory and contradicting allegations in an effort to plead around another Rule 12(b)(6) motion, fares no better in the post-*Twombly / Iqbal* era, and must also be dismissed as to P&G for failure to state a claim upon which relief can be granted. Specifically, none of Plaintiff's allegations plausibly give rise to an entitlement to relief on her claims against P&G and therefore, pursuant to Fed. R. Civ. P. 12(b)(6), those claims should be dismissed *with prejudice.* "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)); *see also*, *Chandler v. Forsyth Tech. Cmty. Coll.*, 2018 U.S. Dist. LEXIS 24894, at *7 (M.D.N.C. Feb. 15, 2018) (The court "cannot ignore a clear failure in the pleadings to allege any facts which set forth a claim.").

The Supreme Court held in *Twombly*, 550 U.S. 544 (2007), that in order to survive a Rule 12(b)(6) motion to dismiss, a complaint must include factual allegations which are "…enough to raise a right to relief above the speculative level." *Id* at 555. A complaint will not survive Rule 12(b)(6) review where it contains "naked assertions[s] devoid of further factual enhancement." *Id* at 557. The *Twombly* Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id* at 561 (alteration in original). Thus, "[a] pleading that offers 'labels and conclusions or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009); *see also Wilkerson v. Christian*, 2008 U.S. Dist. LEXIS 12744, at *12 (M.D.N.C. Feb. 19, 2008) (A "…formulaic recitation of the elements of a cause of action will not do.") (*quoting Twombly*, 550 U.S. at 555). Instead, a claimant must plead sufficient facts to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570.

When considering a motion to dismiss, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (citations omitted); *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Not all allegations are entitled to this presumption, however, as the court first identifies and disregards those allegations that are mere conclusions, because the court "need not accept the legal conclusions drawn from the facts, and [they] need not accept as true

7

unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

To the extent the complaint contains well-pleaded factual allegations, the court next determines whether those allegations plausibly allege a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678. "To survive a motion to dismiss pursuant to Rule 12(b)(6), plaintiff's '[f]actual allegations must be enough to raise a right to relief above the speculative level,' thereby nudg[ing] their claims across the line from conceivable to plausible.'" *Aziz v. Alcolac, Inc.,* 658 F.3d 388, 391 (4th Cir. 2011) (quoting, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2008)).

What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Iqbal*, 556 U.S at 678. A complaint falls short of the plausibility standard where a plaintiff pleads "facts that are 'merely consistent with' a defendant's liability..." *Id* In order to survive a motion to dismiss, the complaint must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

For the reasons that follow, Plaintiff's claims against P&G fail to state a claim upon which relief can be granted and should be dismissed, *with prejudice*.

    a. **Plaintiff's Retaliation Claim Fails Because She Cannot Establish the required Causal Nexus between Her Alleged Protected Activity and Termination.**

Plaintiff's Title VII and Section 1981 retaliation claim against P&G must fail because the Amended Complaint <u>admits</u> that P&G was justified in terminating Plaintiff's employment

after Dr. Spillmann refused to allow Plaintiff to work under his medical license. This negates any plausible claim that "but for" her participation in protected activity, P&G would not have terminated her employment. To establish a prima facie claim of retaliation under Title VII or Section 1981, a plaintiff must allege facts to support, "(1) that she engaged in a protected activity, as well as (2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the two events." *Boyer-Liberto v. Fontainebleau Corp.,* 786 F.3d 264, 281 (4th Cir. 2015) (quotations and citation omitted) (Title VII); *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 190 (4th Cir. 2001) (citing *Bryant v. Aiken Reg'l Med. Ctrs., Inc.,* 333 F.3d 536, 543 (4th Cir. 2003) (Section 1981)). In order to adequately allege a causal link, the allegations in the complaint must **plausibly show that plaintiff's protected activity was a but-for cause of the defendant's alleged adverse action**. *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 2534 (2013) (*emphasis added*); see also, *Stewart v. Jeld-Wen, Inc.,* No. 1:13-cv-00240-MOC-DLH, 2014 U.S. Dist. LEXIS 146331, at *16 (W.D.N.C. Oct. 14, 2014) (holding that plaintiff's § 1981 retaliation claim must be proven "according to traditional principles of but-for causation") (citing *Nassar*, 133 S. Ct. at 2533). Courts in other circuits have also held that *Nassar* applies to § 1981 claims. *See, e.g., Wright v. St. Vincent Health Sys.,*730 F.3d 732, 737, 738 n.5 (8th Cir. 2013) (holding that in § 1981 retaliation cases, causation requires proof that the desire to retaliate was the but-for cause of the adverse action) ("In light of *Nassar* and our precedent, it is now definitively established that the determining-factor standard logically must be met in both Title VII and § 1981 retaliation cases"); *Barker v. Comput. Sci. Corp.*, No. 1:13-cv-857, 2015 U.S. Dist. LEXIS 39994, at *18 n.9 (E.D. Va. Mar. 27, 2015) (same, citing cases).

Here, assuming Plaintiff could satisfy the first two elements of her retaliation claim, there is no dispute that the Amended Complaint fails to proffer facts to satisfy the third and causal element because Plaintiff concedes that her alleged protected activity was <u>not</u> the but-for cause of P&G's decision to terminate her employment. To the contrary, Plaintiff pleads that it was Dr. Spillmann's refusal to allow Plaintiff to work under his medical license that made it **necessary** for P&G to terminate her employment. Specifically, the Amended Complaint alleges:

> The Plaintiff contends that Defendant Spillmann was aware that if he refused to allow the Plaintiff to work under his license, the **Defendant P&G would have to terminate her employment**.

Amended Complaint, DE # 26, ¶ 45 (*emphasis added*). Accordingly, Plaintiff has negated any plausible claim that but-for, or in the absence of, her alleged protected activity, P&G would not have had grounds to terminate her employment. Indeed, Plaintiff further alleges that Dr. Spillmann **independently** made the decision to refuse to allow her to practice under his medical license:

> The Plaintiff contends that Defendant Spillmann had an independent personal stake in achieving his goal of having the Plaintiff's employment terminated.

*Id* at ¶ 46 (emphasis added). According to the "facts", as pled by Plaintiff, P&G: a) had grounds to terminate Plaintiff's employment for a reason other than her alleged protected activity; and b) those grounds for termination developed **independent of P&G**. While Plaintiff alleges elsewhere that P&G and "employees" Spillmann[3] and Wright agreed to and

---

[3] Similarly, Plaintiff contradicts this allegation that Dr. Spillmann was an employee of P&G in other portions of the Amended Complaint. *See* Amended Complaint, DE # 26, ¶ 93.

operated pursuant to a conspiracy when they "engaged in a concerted effort to terminate her employment" (see, e.g., *Id* at ¶¶ 81-82), Plaintiff cannot have it both ways, and any effort to pack the Amended Complaint with conflicting allegations in order to cover both sides of the coin should not be granted the presumption of truth. *Giarratano*, 521 F.3d at 302.

For these reasons, Plaintiff's retaliation claim against P&G should be dismissed *with prejudice* because she has failed to plausibly allege facts to support that her alleged protected activity was the "but-for" cause of P&G's decision to terminate her employment.

> **b. Plaintiff's Discrimination Claim Should be Dismissed Because She has Failed to Plausibly Allege a Prima Facie Case of Discrimination Under Title VII, Section 1981, and NCEEPA.**

Plaintiff's discrimination claim against P&G should be dismissed because she has failed to plead facts to plausibly allege that she was performing at a level that met her employer's legitimate expectations or that she suffered any adverse employment action because of her race. In order to establish a prima facie case of disparate treatment, a plaintiff must plausibly allege that: "(1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) at the time of the adverse employment action, she was performing at a level that met the employer's legitimate job expectations; and (4) the adverse employment action occurred "under circumstances which give rise to an inference of unlawful discrimination." *Jenkins v. Trs. of Sandhills Cmty. Coll.*, 259 F. Supp. 2d 432, 443 (M.D.N.C. 2003) (citing *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 851 (4th Cir. 2001)). "The elements of a prima facie section 1981 disparate treatment claim in the employment setting are the same as those for a Title VII claim." *Alexander v. City of Greensboro*, 762 F. Supp. 2d 764, 792 (M.D.N.C. 2011). Similarly, wrongful discharge claims brought under NCEEPA are subject to the same

11

evidentiary standards as Title VII. *Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995) ("Given the similar language and underlying policy of § 143-422.2 and Title VII, 42 U.S.C. § 2000e et seq., the North Carolina Supreme Court has explicitly adopted the Title VII evidentiary standards in evaluating a state claim under § 143-422.2 . . . .").

Plaintiff cannot survive a motion to dismiss as to this claim because she has pled facts which support that she WAS NOT performing at a level that met P&G's legitimate job expectations at the time of her termination. Indeed, Plaintiff has affirmatively pled that:

- "...Defendant Wright informed Dr. Spillmann, and others, that she had concerns regarding Plaintiff's nursing skills." [DE # 26, ¶ 31]
- Spencer informed Plaintiff that "...there had been several complaints made against her by unspecified and unnamed employees." [DE # 26, ¶ 35]
- Wright "...submitted a complaint to the North Carolina Board of Nursing allegedly because the Plaintiff's conduct at work violated certain aspects of the Nurse Practices Act." [DE # 26, ¶ 36]
- Dr. Spillmann had "...filed a complaint against her **and would no longer support her practicing under his license**, allegedly because of poor work performance." [DE # 26, ¶ 38] (*emphasis added*)
- Defendant Spillmann was aware that if he refused to allow the Plaintiff to work under his license, the **Defendant P&G would have to terminate her employment**. [DE # 26, ¶ 45] (*emphasis added*)

Plaintiff's conclusory assertion that she "...contends that she performed her job satisfactorily..." [DE # 26, ¶ 42] is insufficient, and inconsistent with the specific facts Plaintiff has pled indicating that, at the time of her termination, she was ***not*** performing at a level that met her employer's legitimate expectations, including, but not limited to her specific factual allegations that if Dr. Spillmann did not support her working under his license, P&G would have no choice but to terminate her employment. [*Id* at ¶¶ 38, 45] *Williams v. Cerberonics*, Inc., 871 F.2d 452, 459 (4th Cir. 1989) (a plaintiff's subjective belief is not evidence of

12

discrimination); *Barnes v. Colvin*, No. 5:12-CV-696-D, 2013 U.S. Dist. LEXIS 183247, at *17 (E.D.N.C. Nov. 13, 2013) ("The alleged bias must be evident from the record and not based on speculation or inference.").

Further, Plaintiff has not pled facts to support the fourth element of this claim. Plaintiff alleges three acts which she contends constituted discriminatory disparate treatment: 1) Wright had a higher salary; 2) Wright received training that Plaintiff did not; and 3) Spencer and Rouleau did not support Plaintiff's interest in seeking a position on P&G's disability board. Each of these alleged adverse actions fails to support Plaintiff's discrimination claim, however, because Plaintiff has failed to plausibly allege that any of these adverse actions occurred "under circumstances which give rise to an inference of unlawful discrimination." *Jenkins*, 259 F. Supp. 2d at 443.

Plaintiff's claim that she was discriminated against because Wright was paid a higher salary than her is supported with nothing more than: 1) Wright was paid more than Plaintiff; 2) Plaintiff is African American and Wright is Caucasian; and 3) "Plaintiff felt the disparity in pay was discriminatory." Amended Complaint, DE # 26, ¶ 21. Mere "labels and conclusions or a formulaic recitation of the elements of a cause of action" such as these are insufficient to support Plaintiff's claim or survive a Rule 12(b)(6) motion. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quotations omitted). Plaintiff has specifically alleged that Wright was hired to the Nurse Manager position in 2016, two years after Plaintiff. [DE # 26, ¶¶ 13-14]. Accordingly, the more reasonable inference to be drawn from the Amended Complaint, as plead, is that when P&G offered Wright the Nurse Manager position, it made a business decision to offer a higher salary for the Nurse Manager position in 2016 than it had in 2014. Stated differently, the two year time

lapse, as alleged by Plaintiff, may account for different salary amounts offered for the position. Moreover, Plaintiff has failed to even identify how much more in salary Wright was purportedly earning than her, thereby failing to plausibly allege that the difference in pay was sufficient to rise to the level of an adverse action (or not).

Similarly, Plaintiff's claim that she was discriminated against because P&G offered Wright training that it did not offer to her is devoid of any well-plead allegations that either: 1) identify the "training" Wright received; 2) identify the "additional training" that Plaintiff requested; or 3) whether the training that Wright purportedly received was the same or different from the training that Plaintiff requested, therefore making it impossible to determine whether this was truly an "adverse action." Moreover, Plaintiff specifically alleges in the Amended Complaint that when Wright was hired, she "had less education and work experience with P&G than [Plaintiff]." DE # 26, ¶ 21. Accordingly, to the extent that Plaintiff has alleged any well-pleaded facts in support of this claim (which is disputed), those facts (assuming them to be true) at best support the inference that P&G offered Wright training because she "had less education and work experience with P&G than [Plaintiff]" – which completely undermines Plaintiff's claim that P&G's decisions with regard to training were based on race. In short, the limited non-conclusory facts which Plaintiff has alleged again negate the plausibility of her claim that P&G discriminated against her when it offered training to Wright but not her.

Finally, in support of Plaintiff's claim that P&G discriminated against her when Spencer and Rouleau purportedly declined to support her application for a position on P&G's disability board, Plaintiff alleges only that:

14

- She was "qualified" for the position, and sought the support of her Manager, Spencer, and Senior Human Resources Manager Rouleau [DE #26, ¶ 23]
- "Plaintiff would not receive the position on the disability board without their support" [*Id*, at ¶ 25]
- Neither Spencer nor Rouleau supported Plaintiff for the position on the disability board [*Id*, at ¶ 23]

Critically, and fatal to Plaintiff's discrimination claim, is that the Amended Complaint does not include a single allegation that: 1) Plaintiff applied for the position on the disability board; or 2) that P&G denied Plaintiff's application for a position on the disability board. *Id* In short, according to Plaintiff's pleading, after Spencer and Rouleau declined to support Plaintiff, she gave up and did not take any further steps to apply for the position. There is no adverse action here. Plaintiff also fails to plead that a comparator outside of her race was treated more favorably, e.g., received the support of Spencer and Rouleau for the disability board position. In order to satisfy the final element of her claim, Plaintiff must plead facts which plausibly support that P&G treated her less favorably than a similarly-situated employee from outside of her race. *Laing v. Fed. Express Corp.*, 703 F.3d 713, 719 (4th Cir. 2013) ("[C]ourts . . . consider[] comparator evidence to be a particularly probative means for discerning whether a given adverse action was the product of a discriminatory motive. . . . federal courts now routinely rely on comparator evidence when deciding whether an adverse employment action was driven by a discriminatory motive.").

The deficiencies in Plaintiff's pleading with regard to this claim can perhaps best be illustrated by the sheer volume of conclusory allegations, subjective belief and speculation in her Amended Complaint, here often phrased as, "Plaintiff contends". Such conclusory allegations and allegations of subjective belief and speculation are insufficient to support claims of discrimination

15

and should be disregarded. *Giarratano,* 521 F.3d at 302 ("the court . . . need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."); *Williams v. Cerberonics*, Inc., 871 F.2d 452, 459 (4th Cir. 1989) (a plaintiff's subjective belief is not evidence of discrimination); *Barnes v. Colvin*, No. 5:12-CV-696-D, 2013 U.S. Dist. LEXIS 183247, at *17 (E.D.N.C. Nov. 13, 2013) ("The alleged bias must be evident from the record and not based on speculation or inference."); *Carrier-Tal v. McHugh*, No. 2:14cv626, 2016 U.S. Dist. LEXIS 192157, at *36 (E.D. Va. Apr. 14, 2016) (dismissing race discrimination claim where plaintiff supported claim with nothing more than speculation).

For all of these reasons, Plaintiff's discrimination claim fails to "raise a right to relief above the speculative level," *Aziz*, 658 F.3d at 391, and should be dismissed.

### c. **Plaintiff Has Failed to State a Claim of Defamation Against P&G.**

To raise an actionable claim of defamation, a plaintiff must allege that the defendant caused injury to the plaintiff by the publication of a false statement, of and concerning the plaintiff, to a third person. *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 29, 568 S.E.2d 893, 897 (2002) (citation omitted), *disc. rev. denied*, 357 N.C. 163, 580 S.E.2d 361, *cert. denied*, 540 U.S. 965 (2003).

Plaintiff has failed to plausibly allege that P&G made any defamatory statements to a third party regarding Plaintiff. *See generally*, Amended Complaint, DE # 26. In addition, Plaintiff fails to allege that she was harmed by false statements that P&G made to a third party. *Id*

At best, Plaintiff alleges in the alternative that Defendant Wright made false statements to the Board "at the instruction of the Defendant P&G," [DE #26, ¶ 76] but fails to include

16

a single well-pleaded allegation that P&G made any such "instruction" to Wright. To the extent that Plaintiff's claim rests on a theory that P&G is responsible for the conduct of Wright, once again, Plaintiff's eagerness to add "facts" to support her claims against the individual defendants negates the plausibility of her claim against P&G. Plaintiff may not attempt to avoid a Rule 12(b)(6) dismissal by alleging the same claim against multiple parties with contradictory allegations. It is clear in the Amended Complaint that Plaintiff has added numerous paragraphs in an effort to survive a motion to dismiss as to her claims against the individual defendants. In furtherance of these efforts, Plaintiff contends that Wright was acting individually and outside her capacity as a P&G employee. Plaintiff cannot, at the same time, plausibly allege that P&G must answer for Wright's alleged defamation under a respondeat superior doctrine. Accordingly, Plaintiff's efforts to plead conflicting allegations in order to cover both sides of the coin are improper and those allegations should not be granted the presumption of truth. *Giarratano*, 521 F.3d at 302.

The Amended Complaint is also devoid of any factual allegation that Plaintiff was harmed by any purported statement of P&G to a third party. Once again, Plaintiff's own pleading negates the plausibility of this claim. Plaintiff alleges that she was harmed (i.e. terminated) as a result of Wright's purported conduct [DE #26, ¶ 77]; however there is no allegation of any harm suffered by Plaintiff as a result of any communication outside of the alleged "false accusations" made by Wright to P&G.

As such, Plaintiff's defamation claim against P&G should be dismissed *with prejudice* because she has failed to allege facts to support that P&G made any defamatory statements to

a third party regarding Plaintiff or that she was harmed by any purported false statements that P&G made to a third party.

### d. **Plaintiff Has Failed to State a Claim of Civil Conspiracy Against P&G.**

For liability to exist for a civil conspiracy, a plaintiff must show that there was "(1) an agreement between *two or more individuals*; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Privette v. University of North Carolina*, 96 N.C. App. 124, 139, 385 S.E.2d 185, 193 (1989) (citations omitted) (emphasis added).

In order to satisfy the first element of a *prima facie* case of civil conspiracy the plaintiff must plausibly allege that there were "two persons or entities" that participated. A conspiracy claim requires *two or more* actors and this requirement is not met when all alleged conspirators work on behalf of the same corporation. "A corporation's officers, employees, *or agents* are mere extensions of the corporation, and an agreement between such personnel . . . is therefore not a conspiracy." S*tanley v. Wentworth Voluntary Fire Dep't, Inc.*, 2011 U.S. Dist. LEXIS 93129, at \*49 (M.D.N.C. Aug. 17, 2011) (emphasis added). It is well settled that "[a] corporation cannot conspire with itself." *Turner v. Randolph County*, 912 F. Supp. 182, 186-87 (M.D.N.C. 1995). "Alleging that a corporation is conspiring with its *agents, officers or employees* is accusing a corporation of conspiring with itself." *Garlock v. Hilliard*, 2000 NCBC LEXIS 6, \*16 (N.C. Sup. Ct. Aug, 22, 2000) (emphasis added) (citing *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1987)). As such, courts treat "acts of the agent [as] acts of the corporation." *Buschi*, 775 F.2d at 1251. Thus, where all of the alleged conspirators are agents of a single corporation, the intracorporate conspiracy doctrine bars liability because the "two or more individuals"

requirement is not met. *Bon Aqua Int'l, Inc. v. Second Earth, Inc.*, 2013 U.S. Dist. LEXIS 11635, at *74-75 (M.D.N.C. Jan. 29, 2013). A plaintiff cannot avoid this rule by individually naming defendants. *Buschi*, 775 F.2d at 1252.

Again, Plaintiff's specific factual allegations negate the plausibility of her claim. Plaintiff alleges that Defendants "Wright and Spillmann, as well as other employees of Defendant P&G . . . engaged in a concerted effort to terminate her employment". [DE # 26; ¶ 81]. As to which actors were involved, Plaintiff alleges only that "an agreement existed between two or more persons, including but not limited to Defendants Spillmann, Wright and Spencer." [*Id*, at ¶ 82]. Plaintiff does not, and cannot dispute that Candy Wright was an employee of P&G. [*Id*, at ¶¶ 14, 15, 16] Plaintiff does not and cannot dispute that Spencer was an employee of P&G. [*Id*, at ¶ 10]

With regard to Dr. Spillmann, Plaintiff specifically alleges that Spillmann "worked as a contract physician for the Defendant P&G…" [*Id*, at ¶ 17], and repeatedly acknowledges that her employment with P&G was contingent upon her working under Dr. Spillmann's license [*Id*, at ¶¶ 19, 43, 45, 85]. Plaintiff's affirmative allegations that Dr. Spillmann was not an employee of P&G [*Id*, at ¶¶ 17, 70] do not negate that Dr. Spillmann was admittedly P&G's agent, and Plaintiff pleads as such in the alternative [*Id*, at ¶ 93]. Plaintiff's "new" allegations that Dr. Spillmann had an "independent personal stake" in seeking monetary gain (*see, e.g.*, DE # 26, ¶ 85) do not negate the facts pled by Plaintiff specifically averring that Dr. Spillmann worked for P&G and directly supervised both Wright and Plaintiff, both of whom were *required* to work under his medical license. Taken all together, Dr. Spillmann cannot be treated as some third party outside of P&G. Plaintiff admits that she was only permitted to perform the

19

duties of her role as nursing manager by working under Dr. Spillmann's medical license and that her employment with P&G required that she work under Spillmann's medical license. [*Id*, at ¶¶ 19, 43, 45, 83, 85] Plaintiff admits that when her nursing skills were called into question, Dr. Spillmann reviewed her medical files. Plaintiff further admits that, after reviewing these files, Dr. Spillmann prohibited Plaintiff from working under his license. [*Id*, at ¶¶ 38] Plainly, in doing any of these things that Plaintiff has identified, Dr. Spillmann was acting as an agent of P&G.

Even if Plaintiff can plausibly allege that there was more than one legally recognizable entity/person involved in the alleged conspiracy, Plaintiff must also allege facts sufficient to plausibly support that there was an "agreement" between these persons. Plaintiff alleges only that "an agreement existed between two or more persons, including but not limited to Defendants Spillmann, Wright and Spencer." [*Id*, at ¶ 82]. Plaintiff's conclusory allegation that an "agreement existed" is unsupported by any well-pleaded facts and is once again inconsistent with other specific factual allegations in Plaintiff's Amended Complaint. Plaintiff's allegations that Dr. Spillmann and Wright were individually motivated, e.g. that Dr. Spillmann had an "independent personal stake," [*Id*, at ¶¶ 45, 49] and Wright had an "ulterior motive" [*Id*, at ¶ 66] are inconsistent with Plaintiff's conclusory statement that Defendants were operating pursuant to a conspiracy. As such, Plaintiff's allegations are insufficient to withstand a motion to dismiss as to her conspiracy claim.

## CONCLUSION

**WHEREFORE**, for the reasons set forth above Defendant P&G respectfully requests that Plaintiff's claims against Defendant P&G be DISMISSED *with prejudice*.

Respectfully submitted this the 25th day of May, 2018.

JACKSON LEWIS P.C.

BY:    <u>/s/ M. Robin Davis</u>
        M. ROBIN DAVIS
        N.C. State Bar No. 21655
        CAITLIN M. GOFORTH
        N.C. State Bar No. 49227
        *Attorneys for Defendants The Procter &*
        *Gamble Mfg. Co and Candy Wright*
        3737 Glenwood Avenue, Suite 450
        Raleigh, NC 27612
        Telephone:  (919) 760-6460
        Facsimile:  (919) 760-6461
        Email:  Robin.Davis@jacksonlewis.com
        Email:  Caitlin.Goforth@jacksonlewis.com

## VERIFICATION OF COMPLIANCE WITH LR 7.3(d)(1)

The undersigned hereby verifies that the above brief does not exceed 6,250 words including the body of the brief, headings and footnotes.

Respectfully submitted, this the 25th day of May, 2018.

JACKSON LEWIS P.C.

BY:    /s/  M. Robin Davis
       M. ROBIN DAVIS
       N.C. State Bar No. 21655
       CAITLIN M. GOFORTH
       N.C. State Bar No. 49227
       *Attorneys for Defendants The Procter &*
              *Gamble Mfg. Co and Candy Wright*
       3737 Glenwood Avenue, Suite 450
       Raleigh, NC 27612
       Telephone:   (919) 760-6460
       Facsimile:    (919) 760-6461
       Email:  Robin.Davis@jacksonlewis.com
       Email:  Caitlin.Goforth@jacksonlewis.com

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

CIVIL ACTION NO. 1:18-CV-00133-WO-LPA

| | | |
|---|---|---|
| DOROTHEA ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | **CERTIFICATE OF** |
| THE PROCTER & GAMBLE | ) | **SERVICE** |
| MANUFACTURING COMPANY | ) | |
| ("P&G"), SCOTT SPILLMANN, MD, | ) | |
| and CANDY WRIGHT, | ) | |
| | ) | |
| Defendants. | ) | |

The undersigned certifies that on May 25, 2018, the foregoing *Memorandum of Law in Support of Defendant P&G's Motion to Dismiss Plaintiff's Amended Complaint* was electronically filed with the Clerk of the Court, using the Court's CM/ECF electronic service system which will serve a copy on all counsel of record as follows:

Angela Newell Gray
Gray Newell Thomas, LLP
7 Corporate Center Court, Suite B
Greensboro, NC 27408
angela@graynewell.com
*Attorney for Plaintiff*

Perry C. Henson, Jr.
Nicole R. Scallon
Henson & Talley LLP
Post Office Box 3525
114 N. Elm Street, Suite 600
Greensboro, NC 27401
phenson@hensonlawyers.com
nscallon@hensonlawyers.com
*Attorneys for Defendant Scott Spillmann, MD*

23

JACKSON LEWIS P.C.

BY:    */s/ M. Robin Davis*
        M. ROBIN DAVIS
        N.C. State Bar No. 21655
        CAITLIN M. GOFORTH
        N.C. State Bar No. 49227
        *Attorneys for Defendants Procter &*
            *Gamble Mfg. Co and Candy Wright*
        3737 Glenwood Avenue, Suite 450
        Raleigh, NC 27612
        Telephone:  (919) 760-6460
        Facsimile:  (919) 760-6461
        Email:  Robin.Davis@jacksonlewis.com
        Email:  Caitlin.Goforth@jacksonlewis.com

4849-1441-3926, v. 3

24