IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DOROTHEA ROBINSON,           )
                             )
            Plaintiff,       )
                             )
     v.                      )     1:18CV133
                             )
THE PROCTER & GAMBLE         )
MANUFACTURING COMPANY, SCOTT )
SPILLMANN, M.D., and CANDY   )
WRIGHT,                      )
                             )
            Defendants.      )


## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Currently before this court are motions to dismiss filed by each of the following Defendants: (1) The Procter & Gamble Manufacturing Company ("P&G"), (Doc. 28); (2) Scott Spillmann, M.D. ("Spillmann"), (Docs. 31, 38); and (3) Candy Wright ("Wright"), (Doc. 33.) Each Defendant moves to dismiss the relevant claims in Plaintiff's complaint, (Amended Complaint ("Am. Compl.") (Doc. 26)), for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, this court finds that the motion to dismiss filed by Defendant Spillmann should be granted. This court further finds that the motions to dismiss filed by Defendants P&G and Wright should

each be granted in part and denied in part, as described more fully herein.

I.  **FACTUAL BACKGROUND**

A concise summary of the factual allegations in the complaint follows. Plaintiff Dorothea Robinson is black and worked for Defendant P&G from 1989 to 2017, first as a technician and later as a registered nurse. (Am. Compl. (Doc. 26) ¶¶ 1, 8, 40.) Plaintiff's claims are based on events that occurred between 2013 and 2017, when she was working as a registered nurse at P&G's Greensboro/Browns Summit facility. (Id. ¶ 8.) Plaintiff worked under the medical license of Defendant Spillmann, a contract physician but not a direct P&G employee, with Spillmann's permission. (Id. ¶¶ 16–18.) Plaintiff's duties included reviewing the sufficiency of invoices submitted to P&G by Spillmann. (Id. ¶ 19.)

In July 2013, Plaintiff applied for a promotion to an open Nurse Manager position. (Id. ¶ 11.) Plaintiff alleges that P&G failed to follow its own hiring procedures and that she complained to P&G supervisors; approximately one year after applying, Plaintiff received the promotion. (Id. ¶¶ 12–13.) P&G then hired Defendant Wright, who is white and had less experience than Plaintiff, as a second Nurse Manager at the Greensboro/Browns Summit facility. (Id. ¶ 14.) Wright had the

same title and responsibilities as Plaintiff and both were full-time P&E employees working under Spillmann's medical license. (Id. ¶¶ 15-16.) In 2017, Plaintiff learned that Wright was paid a higher salary than Plaintiff. (Id. ¶ 20.) Plaintiff inquired within P&G about the salary differential but did not receive a satisfactory answer. (Id. ¶¶ 21-22.)

Plaintiff subsequently applied for a position on the P&G disability board and requested additional training to advance her career; however, Plaintiff did not receive necessary support for her application and was denied training. (Id. ¶¶ 23-24.) Plaintiff made official complaints within P&G about racial discrimination around this time. (Id. ¶¶ 25-28.) Plaintiff, who was responsible for reviewing Spillmann's invoices, also raised concerns with the P&G Finance Manager because she believed that Spillmann was submitting inaccurate and incomplete invoices. (Id. ¶ 33.)

In mid-2017, Plaintiff contends that Spillmann and Wright began a campaign to discredit her by raising concerns about her job performance. (Id. ¶¶ 31-32.) In September 2017, Wright submitted a complaint to the North Carolina Board of Nursing alleging that Plaintiff had violated professional standards of conduct in patient care. (Id. ¶¶ 36-37.) Plaintiff alleges that Wright made false and defamatory statements about her job

performance, both to Spillmann and to the Board. (Id. ¶¶ 66-73.)
In August 2017, Spillmann filed an internal complaint against
Plaintiff and revoked her ability to practice as a nurse under
his medical license. (Id. ¶ 38.) Plaintiff was suspended pending
an investigation into her performance and ultimately terminated
by P&G in late 2017. (Id. ¶¶ 38-40.)

## II.  **PROCEDURAL HISTORY**

Plaintiff received a right to sue letter from the Equal
Employment Opportunity Commission ("EEOC") on November 21, 2017.
(Id. ¶ 41, Ex. A) Plaintiff then timely filed her initial
complaint in Guilford County Superior Court on January 24, 2018,
(see Doc. 1-1 at 23), and P&G removed the case to this court on
February 23, 2018. (Doc. 1.)

Plaintiff subsequently filed an amended complaint. (Am.
Compl. (Doc. 26).) Each Defendant then moved to dismiss the
amended complaint and filed a memorandum in support of its
respective motion: P&G, (Doc. 29); Spillmann, (Doc. 32); and
Wright, (Doc. 34). Defendants P&G and Wright separately filed
answers to the amended complaint. (Docs. 30, 35, respectively.)
P&G then filed an amended answer, (Doc. 37). Spillmann filed an
amended consolidated answer and motion to dismiss, (Doc. 38),
and a memorandum in support thereof, (Doc. 39). These amendments
were permitted as a matter of course. See Fed. R. Civ. P. 15(a).

Plaintiff responded opposing each motion to dismiss. (Docs. 40, 41, 43). Each Defendant filed a reply. (Docs. 42, 45, 46.)

III. **STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In other words, the plaintiff must plead facts that "allow[] the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556–57).

When ruling on a motion to dismiss, this court must accept the complaint's factual allegations as true. Iqbal, 556 U.S. at 678. Further, "the complaint, including all reasonable inferences therefrom, [is] liberally construed in the plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted). Despite this deferential standard, a court will not accept mere legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, [will] not suffice."
Iqbal, 556 U.S. at 678.

Employment discrimination complaints must meet the
Twombly/Iqbal plausibility standard; however, the plaintiff is
not required to make out a prima facie case or satisfy any
heightened pleading requirements at the motion to dismiss stage.
Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002); McCleary-
Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d
582, 584-85 (4th Cir. 2015). The plaintiff is, however, required
to plead facts that permit the court to reasonably infer each
element of the prima facie case, including less favorable
treatment than similarly-situated employees outside of the
protected class. McCleary-Evans, 780 F.3d at 585; see also
Iqbal, 556 U.S. at 682-83 (plaintiff must plead facts supporting
reasonable inference of discriminatory intent); Coleman v. Md.
Ct. of Appeals, 626 F.3d 187, 191 (4th Cir. 2010) (stating that
a complaint must "assert facts establishing the plausibility"
that plaintiff was terminated based on race).

"A plaintiff may prove that an employer took action with
discriminatory or retaliatory intent through direct evidence or
through the burden-shifting framework of McDonnell Douglas Corp.
v. Green." Strothers v. City of Laurel, 895 F.3d 317, 327 (4th
Cir. 2018). Under the McDonnell Douglas framework, once the

plaintiff has made a plausible showing of each element, the claim will survive a motion to dismiss and the burden then shifts to the defendant to provide "some legitimate, nondiscriminatory reason" for the disparate treatment. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).

**IV.** **ANALYSIS**

    **A.** **Employment Discrimination**

A Title VII employment discrimination claim includes the following elements: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." <u>Coleman</u>, 626 F.3d at 190.

Plaintiff has alleged race-based employment discrimination against P&G pursuant to Title VII and 42 U.S.C. § 1981.[1] Plaintiff's race discrimination claim is premised on two allegations: (1) that P&G paid Plaintiff less than Wright due to race and (2) that P&G terminated Plaintiff due to her race.

This court finds that Plaintiff has met her 12(b)(6) burden on the first three elements of the Title VII prima facie case: Plaintiff is African-American and thus a member of a protected

---

[1] As the Fourth Circuit has explained, "[t]he elements an employee must prove are the same under either provision." <u>Pryor v. United Air Lines, Inc.</u>, 791 F.3d 488, 495 (4th Cir. 2015).

class. Love-Lane v. Martin, 355 F.3d 766, 787 (4th Cir. 2004).

Plaintiff has alleged that she performed her job satisfactorily, and both the alleged pay disparity and Plaintiff's termination are adverse employment actions. See Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) (stating that hiring and firing are ultimate employment decisions cognizable under Title VII); Williams v. Westwood One Radio Networks, Inc., No. 96-1666, 1997 WL 90656, at *3 (4th Cir. 1997) (explaining that a pay disparity is an adverse employment action).

Plaintiff first alleges that she was paid less than Wright, who is white, despite having more extensive experience and holding the same title and position. (Am. Compl. (Doc. 26) ¶¶ 5, 14, 20.) Therefore, Plaintiff has alleged less favorable treatment than a similarly-situated non-minority employee. The Fourth Circuit has explicitly instructed that "evidentiary determinations regarding whether the comparators' features are sufficiently similar to constitute appropriate comparisons generally should not be made at" the motion to dismiss stage. Woods v. City of Greensboro, 855 F.3d 639, 650 (4th Cir.), cert. denied sub nom., City of Greensboro v. BNT Ad Agency, LLC, ____ U.S. ____, 138 S. Ct. 558 (2017). Plaintiff's allegations are sufficient at this stage to state a claim for race-based discrimination and move to the next step of the burden-shifting

framework. P&G's motion to dismiss Plaintiff's pay-disparity-based race discrimination claim will be denied.

This court will next evaluate Plaintiff's wrongful termination claim. To prove wrongful termination discrimination under Title VII, Plaintiff must show that "the position remained open or was filled by similarly qualified applicants outside the protected class." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004), abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013). Plaintiff has not alleged that the nurse manager job either remained open or was filled by a non-minority replacement following Plaintiff's termination. Further, it appears to this court far more plausible that Plaintiff's termination was due to her internal complaints and Spillmann's ultimate decision to revoke his license authorization as opposed to racial discrimination. Plaintiff specifically alleges that "Spillmann did not want [Plaintiff] to work under his license after she refused to approve his untimely invoices and after making such assertions about him to" P&G administrators. (Am. Compl. (Doc. 26) ¶ 43.) Plaintiff also acknowledges that "if [Spillmann] refused to allow the Plaintiff to work under his license, the[n] Defendant P&G would have to terminate [Plaintiff's] employment." (Id. ¶ 45.) In the absence of any disparate treatment

allegations, this claim will be considered and analyzed as a retaliation claim, not a discrimination claim. Therefore, P&G's motion to dismiss Plaintiff's Title VII discrimination claim based on wrongful termination will be granted.

Plaintiff also brings an employment discrimination claim pursuant to N.C. Gen. Stat. § 143-422.2. This provision adopts the legal and evidentiary standards of Title VII, and therefore the analysis of Plaintiff's state law claim is identical to that set forth above. See N.C. Dep't of Correction v. Gibson, 308 N.C. 131, 136-37, 301 S.E.2d 78, 82-83 (1983) ("[W]e look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases."). However, N.C. Gen. Stat. § 143-422.2 was not intended "to provide aggrieved employees with a private right of action beyond that already afforded by federal discrimination statutes."[2] Percell v. Int'l Bus. Machines, Inc., 765 F. Supp. 297, 300 (E.D.N.C. 1991); see also Smith v. First Union Nat'l

---

[2] Further, to the extent that N.C. Gen. Stat. § 143-422.2 does give rise to a common law wrongful discharge claim, see Percell, 765 F. Supp. at 300, Plaintiff needs to allege that her employer required her to violate the law as a condition of continued employment. See, e.g., Sides v. Duke Univ., 74 N.C. App. 331, 342-43, 328 S.E.2d 818, 826-27 (1985), overruled on other grounds by Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329, 493 S.E.2d 420 (1997). Plaintiff has not made this allegation.

Bank, 202 F.3d 234, 247 (4th Cir. 2000) (no private right of action). Therefore, this court will grant P&G's motion to dismiss Plaintiff's claim under N.C. Gen. Stat. § 143–422.2.

**B.   Retaliation**

Plaintiff alleges that P&G retaliated against her for making complaints about alleged racial discrimination by failing to support her application to the disability board, failing to allow her to continue working under Spillmann's medical license, paying her less than Wright, and ultimately terminating her.

Title VII[3] prohibits discrimination against any person "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). This provision covers both opposition to racially discriminatory employment practices and participation in an investigation or proceeding regarding such practices. Id. The bar for what constitutes opposition is not high — any comment that disapproves of allegedly discriminatory workplace conduct is considered opposition to an unlawful employment

---

[3] This analysis is identical for Plaintiff's 42 U.S.C. § 1981 retaliation claim. Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015).

practice. See Crawford v. Metro. Gov't of Nashville and Davidson Cty., 555 U.S. 271, 276 (2009); see also DeMasters v. Carilion Clinic, 796 F.3d 409, 417 (4th Cir. 2015).

"To establish a prima facie case of retaliation in contravention of Title VII, a plaintiff must prove (1) that she engaged in a protected activity, as well as (2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the two events." Boyer-Liberto, 786 F.3d at 281 (internal quotation marks and citation omitted). A plaintiff is not required to know to a certainty that the opposed practice is unlawful; rather, a plaintiff engages in protected activity whenever she opposes employer actions and she "reasonably believed that those actions were in violation of Title VII." E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 406 (4th Cir. 2005). As to the second element, an "adverse action" is any action that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination," even if the action was not directly tied to employment. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 62, 66-68 (2006) (stating that "adverse action" as used in the retaliation context is broader than a Title VII "adverse employment action") (quoting Washington v. Ill. Dep't of Revenue, 420 F.3d 658, 662 (7th Cir. 2005)).

To establish a causal link, the third element, the plaintiff must illustrate close temporal proximity between the "employer's knowledge of protected activity" and the alleged retaliatory action. Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001); see also Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999) (stating that one and one-half months is sufficiently short to demonstrate causation, but three months is too long). However, temporal proximity alone will not suffice where the passage of time undermines any conclusion that the events are causally connected. See Breeden, 532 U.S. at 273–74 (finding that a twenty-month gap suggested "no causality at all"; citing cases finding no causal link when the gap was only three or four months). In that event, the plaintiff may also establish causation by presenting circumstantial evidence of retaliatory intent during the intervening period between the protected conduct and the adverse action. See, e.g., Lettieri v. Equant Inc., 478 F.3d 640, 650–51 (4th Cir. 2007) (intervening events showing retaliatory animus prior to actual termination provided a causal link).

A plaintiff may prove a Title VII retaliation claim either by direct or indirect evidence, or under the McDonnell Douglas burden-shifting framework. Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015). Title VII discrimination claims

can proceed on a mixed-motive theory if the plaintiff shows that any impermissible consideration was "a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). However, retaliation claims are subject to a higher standard: the plaintiff must present "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Nassar, 570 U.S. at 360; see also Foster, 787 F.3d at 251–52 (stating that, after Nassar, both methods of proof require but-for causation).

Here, this court finds that Plaintiff has plausibly alleged each element of a Title VII retaliation claim. Plaintiff's complaints regarding the pay and training disparities between herself and Wright were protected activity because Plaintiff reasonably believed these disparities violated Title VII's non-discrimination mandate. The refusal to support Plaintiff's application to the disability board and Plaintiff's ultimate termination were each adverse employment actions because they would have dissuaded a reasonable employee from opposing Title VII violations. It is well-established that termination is an adverse action. See, e.g., Strothers, 895 F.3d at 328. Because Plaintiff alleges that the disability board position "would have further advanced her career and provided her with excellent

growth opportunity," (Am. Compl. (Doc. 26) ¶ 23), she has plausibly alleged that denial of support for her application "impact[ed] on the terms and conditions of employment." Adams v. Anne Arundel Cty. Pub. Schs., 789 F.3d 422, 431 (4th Cir. 2015); see also White, 548 U.S. at 69 ("[E]xcluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination.").

Plaintiff first learned of the alleged pay disparity in January 2017 and approached both manager Sherry Spencer and Senior Human Resources Manager Terri Rouleau about the disparity shortly thereafter. (Am. Compl. (Doc. 26) ¶¶ 20, 22.) Plaintiff then applied for the disability board position in February 2017 and was refused support. (Id. ¶ 23.) This temporal proximity is sufficient to plausibly demonstrate the required causal link. See, e.g., Anderson, 181 F.3d at 1179. Further, P&G's alleged actions in the period between Plaintiff's initial complaints and Plaintiff's ultimate termination in late 2017 — gathering complaints about Plaintiff's work performance, instituting a board investigation, and removing Plaintiff's work validation — support at least an inference of retaliatory animus throughout this period. Finally, whether Plaintiff proceeds by indirect evidence or under the burden-shifting framework, this court

finds Plaintiff has at least plausibly alleged that the adverse actions she allegedly suffered would not have occurred but for her complaints.[4] Therefore, Plaintiff has alleged sufficient facts to a state a claim for retaliation under Title VII and 42 U.S.C. § 1981, and P&G's motion to dismiss this claim will be denied.

## C. <u>Defamation</u>

Plaintiff alleges that Defendants P&G (through Wright, its agent) and Wright are liable to her for defamation. This court has supplemental jurisdiction over Plaintiff's defamation and other state law claims because they relate to the same factual nexus as her federal discrimination claims. See 28 U.S.C. § 1367; see also Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 616 (4th Cir. 2001) (observing that the district court had discretion to exercise supplemental jurisdiction). A federal court sitting in diversity or supplemental jurisdiction generally applies the relevant substantive law of the state in

---

[4] P&G asserts that Plaintiff cannot show but-for causation because Plaintiff admits she was terminated due to her inability to continue working under Spillmann's license. (Doc. 29 at 8-9.) First, this court notes that it considers the refusal of support for Plaintiff's disability board application to plausibly constitute adverse action and the license withdrawal does not provide an alternative explanation for this event specifically. Second, at the motion to dismiss stage, Plaintiff is not required to rebut Defendant's proffered non-retaliatory rationale. See, e.g., Love-Lane, 355 F.3d at 786-87.

which the court sits, while applying federal procedural law. _Erie R.R. Co. v. Tompkins_, 304 U.S. 64, 72–73, 79–80 (1938); _Hanna v. Plumer_, 380 U.S. 460, 465–66 (1965); see also _United Mine Workers of Am. v. Gibbs_, 383 U.S. 715, 726 (1966) (holding that federal courts are "bound to apply state law" to pendant claims); _In re Exxon Valdez_, 484 F.3d 1098, 1100 (9th Cir. 2007) (finding that _Erie_'s central holding applies to supplemental jurisdiction cases).

To state a claim for defamation under North Carolina law, "a plaintiff must allege that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person." _Boyce & Isley, PLLC v. Cooper_, 153 N.C. App. 25, 29, 568 S.E.2d 893, 897 (2002). A certain set of statements, including any statement that tends to "impeach [plaintiff's] trade or profession," are considered defamatory per se and do not require the plaintiff to prove malicious intent or damages. _Williams v. Rutherford Freight Lines, Inc._, 10 N.C. App. 384, 387–88, 179 S.E.2d 319, 322 (1971).

Plaintiff alleges that Wright (a P&G employee) made defamatory statements about Plaintiff's work performance both to Spillmann and to the North Carolina Board of Nursing. (Am. Compl. (Doc. 26) ¶ 54.) Because the alleged statements were made

during an investigation by the Board of Nursing, North Carolina law provides that Defendants are "immune from any criminal prosecution or civil liability resulting [from those statements] unless such person knew the report was false or acted in reckless disregard of whether the report was false." N.C. Gen. Stat. § 90-171.47. Plaintiff's allegations regarding Wright's state of mind are conclusory, and Plaintiff presents no allegations that Wright <u>actually</u> <u>knew</u> the statements were false yet made them anyway. In fact, Plaintiff's allegations suggest, at the most, mere negligence. (<u>See</u> Am. Compl. (Doc. 26) ¶ 56 (stating that Wright "had not worked with [Plaintiff] long enough or closely enough to know about, or verify, the statements"); <u>id.</u> ¶ 59 (stating that Defendants "knew or should have known the accusations and statements were false").)

This court finds Plaintiff has not plausibly alleged that Wright acted with reckless disregard. Wright is therefore shielded from Plaintiff's defamation claim under N.C. Gen. Stat. § 90-171.47. <u>Cf</u> <u>Houpe v. City of Statesville</u>, 128 N.C. App. 334, 346, 497 S.E.2d 82, 90 (1998) ("Participants in the judicial process must be able to testify or otherwise take part without being hampered by fear of defamation suits."). Plaintiff alleges no defamatory statements by P&G agents other than Wright.

Therefore, the motions to dismiss Plaintiff's defamation claim will be granted.

### D.  **Civil Conspiracy**

Plaintiff alleges that all Defendants engaged in a conspiracy to procure her wrongful termination. As an initial matter, "there is actually no such thing as an [independent] action for civil conspiracy" in North Carolina, and the claim covers only damages caused by overt acts that constitute separate crimes. Fox v. Wilson, 85 N.C. App. 292, 300–01, 354 S.E.2d 737, 743 (1987). "A claim for damages resulting from a conspiracy exists where there is an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way, and, as a result of acts done in furtherance of, and pursuant to, the agreement, damage occurs to the plaintiff." Tuck v. Turoci, No. COA06-1571, 2008 WL 304719, at *6 (N.C. Ct. App. Feb. 5, 2008).

Crucially, however, the alleged conspiracy must have two or more members and "[a]lleging that a corporation is conspiring with its agents, officers or employees is accusing a corporation of conspiring with itself." Garlock v Hilliard, No. 00-CVS-1018, 2000 WL 33914616, at *5 (N.C. Super. Ct. Aug. 22, 2000) (citing Buschi v. Kirven, 775 F.2d 1240, 1252 (4th Cir. 1985)). "An exception to the doctrine of intracorporate immunity exists if

the agent of the corporation has an 'independent personal stake in achieving the corporation's illegal objective.'" <u>Garlock</u>, 2000 WL 33914616, at *6 (quoting <u>Buschi</u>, 775 F.2d at 1252).

"There are two essential ingredients in the principal-agent relationship: (1) authority, either express or implied, of the agent to act for the principal, and (2) the principal's control over the agent." <u>Holcomb v. Colonial Assocs., L.L.C.</u>, 358 N.C. 501, 509, 597 S.E.2d 710, 716 (2004). Plaintiff's allegations reveal that Spillmann, although technically a third-party contractor, was controlled by and subject to the authority of P&G. For example, Plaintiff complained to the P&G Finance Manager about Spillmann's inaccurate invoices and argued that those invoices violated P&G company policy. (<u>See</u> Am. Compl. (Doc. 26) ¶ 33.) This court finds, based on Plaintiff's allegations, that Spillmann was functionally an agent of P&G and thus could not conspire with either P&G or with Wright (a full-fledged P&G employee) under North Carolina law.

Plaintiff argues, however, that Spillmann is outside the protection of the intracorporate immunity doctrine because his actions were driven by a personal financial interest — namely, the desire to have a different employee review his invoices. (Am Compl. (Doc. 26) ¶ 91; (Doc. 43) at 7.) Plaintiff appears to suggest that Spillmann believed Plaintiff's replacement would

not audit his submissions as diligently and would refrain from approaching superiors about inaccurate or incomplete invoices. However, this court finds no allegations in the complaint to support this conclusory assertion. Without knowing who would assume responsibility for reviewing his invoices after Plaintiff's departure, this court does not find it plausible that Spillmann's actions were driven by any personal motive. Further, the allegations in the Amended Complaint do not plausibly establish how Spillmann might have personally profited from this outcome (as opposed to merely avoiding the burden of re-doing paperwork), as Plaintiff does not allege that Spillmann was involved in any scheme to embezzle money from P&G by improperly doctoring invoices for personal gain. Rather, Plaintiff suggests only that Spillmann failed to comply with P&G invoice requirements.

Therefore, the intracorporate immunity doctrine applies. Plaintiff fails to state a claim for civil conspiracy and Defendants' motions to dismiss this claim will be granted.

### E. <u>Tortious Interference</u>

Plaintiff alleges that Defendants Wright and Spillmann tortuously interfered with Plaintiff's employment contract by making false allegations and complaints against Plaintiff and

inducing P&G to fire her.[5] The elements of a tortious

interference claim are:

> (1) a valid contract between the plaintiff and a third
> person which confers upon the plaintiff a contractual
> right against a third person; (2) the defendant knows
> of the contract; (3) the defendant intentionally
> induces the third person not to perform the contract;
> (4) and in doing so acts without justification; (5)
> resulting in actual damage to plaintiff.

United Labs., Inc. v. Kuykendall, 322 N.C. 643, 661, 370 S.E.2d

375, 387 (1988). A "plaintiff's cause of action for tortious

interference with contract lies even though her employment

contract was terminable at will." Lenzer v. Flaherty, 106 N.C.

App. 496, 512, 418 S.E.2d 276, 286 (1992). The North Carolina

Court of Appeals has held that, in order to survive a motion to

dismiss, "the complaint must admit of no motive for interference

other than malice." Filmar Racing, Inc. v. Stewart, 141 N.C.

App. 668, 674, 541 S.E.2d 733, 738 (2001).

A claim for tortious interference with an employment

contract may generally be brought only against a corporate

---

[5] In North Carolina, the tort of interference with business
relations "embraces claims for interference with both existing
contracts and prospective future contracts." E-Ntech Indep.
Testing Servs., Inc. v. Air Masters, Inc., No. 16 CVS 3092, 2017
WL 73449, at *5-6 (N.C. Super. Ct. Jan. 5, 2017). Because
Plaintiff's claim is based on interference with her existing
employment contract, this court will construe Plaintiff's
allegations as tortious interference with an existing contract
and will use that terminology throughout this order.

"outsider," because corporate insiders have "a qualified privilege to interfere with contractual relations between the corporation and a third party." Wilson v. McClenny, 262 N.C. 121, 133, 136 S.E.2d 569, 578 (1964). This protection, however, "is lost [when the interference is] exercised for motives other than reasonable, good faith attempts to protect the non-outsider's interests in the contract interfered with." Lenzer, 106 N.C. App. at 513, 418 S.E.2d at 2.

Here, Defendants Wright and Spillmann assert that they are protected as non-outsiders with a legitimate interest in ensuring that Plaintiff provided a satisfactory standard of care for her patients. (See (Doc. 34) at 21; (Doc. 39) at 16.) Plaintiff argues, in opposition, that Wright and Spillmann were motivated by malice related to Plaintiff's salary and invoice-related complaints to P&G supervisors. (See (Doc. 41) at 18; (Doc. 43) at 13.)

As the doctor responsible for overseeing Plaintiff's nursing practice, Spillmann had an obvious interest in monitoring Plaintiff's job performance and investigating any potential patient incidents. See, e.g., Privette v. Univ. of N.C. at Chapel Hill, 96 N.C. App. 124, 134, 385 S.E.2d 185, 191 (1989) ("Janowsky and Resvani had an interest in insuring proper work procedures at the Center and as such, had a legitimate

professional interest in the plaintiff's performance of his duties. Therefore, Privette's complaint on its face admits that Janowsky and Resvani had a proper motive for their actions."). In fact, because Plaintiff was practicing under Spillmann's medical license, (Am. Compl. (Doc. 26) ¶ 16), any major professional violations by Plaintiff may have jeopardized not only Spillmann's work with P&G but also his medical career. Therefore, this court finds that the tortious interference allegations against Spillmann suggest motives other than malice and that Spillmann is properly afforded qualified immunity as a corporate insider. Spillmann's motion to dismiss Plaintiff's tortious interference with contract claim will be granted.

Wright, on the other hand, was not Plaintiff's supervisor and had no individual professional interest in verifying or ensuring Plaintiff's satisfactory job performance. (Am. Compl. (Doc. 26) ¶ 15.) Further, Plaintiff has alleged that Wright was antagonistic toward Plaintiff at work due to Plaintiff's comments and complaints regarding their salary differential. (Am. Compl. (Doc. 26) ¶ 30.) This court finds that Wright is not a protected insider and that Plaintiff has plausibly alleged an improper motive to interfere with Plaintiff's employment contract. Wright's motion to dismiss Plaintiff's tortious interference claim will be denied

## V.   CONCLUSION

For the foregoing reasons, this court finds that Defendant Spillmann's motion to dismiss should be granted. This court further finds that the motions to dismiss filed by Defendants P&G and Wright should each be granted in part and denied in part, as set forth herein.

**IT IS THERFORE ORDERED** that Defendant Scott Spillmann's Answer with Motion to Dismiss, (Doc. 31), is **DENIED AS MOOT,** in light of the amended document filed by Defendant Spillmann. (See Doc. 38.)

**IT IS FURTHER ORDERED** that Defendant Proctor & Gamble Manufacturing Company's Motion to Dismiss, (Doc. 28), is **GRANTED IN PART AND DENIED IN PART**, in that Defendant P&G's motion to dismiss Plaintiff's Title VII and 42 U.S.C. § 1981 wrongful termination claims, N.C. Gen. Stat. § 143–422.2 claim, and civil conspiracy claim is **GRANTED**, and Defendant P&G's motion to dismiss Plaintiff's Title VII and 42 U.S.C. § 1981 pay disparity and retaliation claims is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Candy Wright's Motion to Dismiss, (Doc. 33), is **GRANTED IN PART AND DENIED IN PART**, in that Defendant Wright's motion to dismiss Plaintiff's defamation and civil conspiracy claims is **GRANTED**, and Defendant Wright's

motion to dismiss Plaintiff's tortious interference with contract claim is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Scott Spillmann's Motion to Dismiss, (Doc. 38), is **GRANTED.**

This the 1st day of March, 2019.

_____
United States District Judge